**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ANDY MAISE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-2629** |
| **JAMES LEBLANC, ET AL.** | **SECTION: "G"(3)** |

## PARTIAL REPORT AND RECOMMENDATION

Plaintiff, Andy Maise, a state prisoner, filed the instant federal civil action pursuant to 42 U.S.C. § 1983.  He named the following defendants:  James LeBlanc, the Secretary of the Louisiana Department of Public Safety and Corrections; Robert Tanner, the Warden of the B.B. "Sixty" Rayburn Correctional Center ("Rayburn"); and Sergeants Robert Goings and Charles Griffith, correctional officers at Rayburn.  In this lawsuit, plaintiff claims that his complaints of being suicidal were ignored and that excessive force was used against him.

The defendants have filed a motion to dismiss.[1]  Plaintiff has opposed that motion.[2]  For the following reasons, the motion should be granted.

## Rule 12(b)(1)

The defendants first argue that the claims against them in their official capacities should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  That rule governs challenges to a court's subject-matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the

---

[1] Rec. Doc. 9.
[2] Rec. Doc. 13.

case." Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir.

1998) (quotation marks omitted).

The defendants are employees of the Louisiana Department of Public Safety and

Corrections.   A claim for monetary damages against a state employee in his official capacity is

actually a claim against the state itself and, as such, is barred by the Eleventh Amendment. See,

e.g., Watson-Buisson v. Louque, Civ. Action No. 12-1871, 2013 WL 5236611, at *1 (E.D. La.

Sept. 13, 2013).[3]  Because Eleventh Amendment immunity deprives the Court of jurisdiction, the

official-capacity claims against the defendants should indeed be dismissed without prejudice

pursuant to Rule 12(b)(1).   Williams v. Thomas, 169 Fed. App'x 285, 286 (5th Cir. 2006);

Warnock v. Pecos County, 88 F.3d 341, 343 (5th Cir. 1996); Watson-Buisson, 2013 WL 5236611,

at *1.

### Rule 12(b)(6)

Defendants LeBlanc and Tanner argue that the claims against them in their individual

capacities should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[4]

That rule allows a defendant to move for dismissal when a plaintiff fails to state a claim upon

---

[3] As the United States Fifth Circuit Court of Appeals has explained:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. ...   By statute, Louisiana has refused any ... waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. See La.Rev.Stat.Ann. § 13:5106(A).
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power.  We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280-81 (5th Cir. 2002) (quotation marks and citations omitted); Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312, 313-14 (5th Cir. 1999).
[4] **Defendants Goings and Griffith have not moved for dismissal of the individual-capacity claims asserted against them.  Therefore, those claims are not addressed herein and should be allowed to proceed pending further development.**

which relief can be granted.  In ruling on a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). However, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. (citation, footnote, and quotation marks omitted).  On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Plaintiff's individual-capacity claim against LeBlanc is that he violated plaintiff's constitutional rights by ignoring his administrative grievance.[5]  However, inmates do not have a constitutional right to an adequate and effective grievance procedure or to have their complaints investigated and resolved to their satisfaction.  Bonneville v. Basse, 536 Fed. App'x 502, 503 (5th Cir. 2013); Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Heaton v. Normand, Civ. Action No. 17-405, 2017 WL 3268341, at *7 (E.D. La. June 22, 2017), adopted, 2017 WL 3252813 (E.D. La. July 31, 2017); Harold v. Goff, Civ. Action No. 16-13041, 2016 WL 8137642, at *5 (E.D. La. Dec. 1, 2016), adopted, 2017

---

[5] Rec. Doc. 1, p. 8.

3

WL 413082 (E.D. La. Jan. 30, 2017).  Therefore, even if LeBlanc did in fact ignore the grievance,

plaintiff cannot state a cognizable claim against LeBlanc based on that incident.

Plaintiff's claim against Tanner is that he failed to (1) train security officers regarding the

use of force against inmates and (2) take appropriate action on plaintiff's administrative

grievance.[6]  Those claims fail for the following reasons.

As the defendants note in their motion, plaintiff's allegations concerning the failure-to-

train claim are purely conclusory.  That will not suffice.  As the United States Supreme Court has

explained:  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to

relief r*equires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do*."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations,

quotation marks, and brackets omitted; emphasis added).

Although failure-to-train claims are actionable, plaintiff's allegations fall far short of what

is required to state such a claim.  The United States Fifth Circuit Court of Appeals has explained:

> A supervisor may … be liable for failure to … train if:  (1) the supervisor … failed
> to … train the subordinate official; (2) a causal link exists between the failure to
> train … and the violation of the plaintiff's rights; and (3) the failure to train …
> amounts to deliberate indifference.
>      ….
>      Deliberate indifference is a stringent standard of fault, requiring proof that
> a municipal actor disregarded a known or obvious consequence of his action.  To
> establish that a state actor disregarded a known or obvious consequence of his
> actions, there must be actual or constructive notice that a particular omission in
> their training program causes employees to violate citizens' constitutional rights
> and the actor nevertheless chooses to retain that program.  *A pattern of similar
> constitutional violations by untrained employees is ordinarily necessary to
> demonstrate deliberate indifference, because without notice that a course of
> training is deficient in a particular respect, decisionmakers can hardly be said to*

---

[6] Rec. Doc. 1, pp. 8-9.

> *have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure-to-train claims in this manner …, a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in de facto respondeat superior liability.*

Porter v. Epps, 659 F.3d 440, 446-47 (5th Cir. 2011) (citations, quotation marks, brackets, and ellipses omitted; emphasis added); see also Brown v. Bryan County, 219 F.3d 450, 459 (5th Cir. 2000) (a failure-to-train claim requires deliberate indifference; "mere negligence in failing to train" is insufficient for liability).  Here, there is no allegation that Tanner had actual or constructive knowledge of a pattern of similar violations.

The Court recognizes that that the foregoing general rule has an exception:  a failure-to-train claim can be based on a single incident (rather than a pattern) *if* the constitutional violation at issue was the "highly predictable consequence" of the particular failure to train.  See, e.g., Davidson v. City of Stafford, 848 F.3d 384, 397 (5th Cir. 2017).  However, the United States Fifth Circuit Court of Appeals has noted that "[t]he single incident exception … is a narrow one, and one that we have been reluctant to expand."  Burge v. St. Tammany Parish, 336 F.3d 363, 373 (5th Cir. 2003).

In Brown v. Bryan County, the case in which the Fifth Circuit first acknowledged the existence of the "single incident" exception, the court took care to note that a plaintiff seeking to impose liability based on the exception faces a daunting burden:  he must be able to show the defendant's "unmistakable culpability and clearly connected causation." 219 F.3d at 461. Moreover, courts have been quick to distinguish Brown by noting that the finding of liability in that case stemmed from the particularly egregious facts.  For example, in declining to apply the exception in Stepney v. City of Columbia, 695 F. Supp. 2d 412 (S.D. Miss. 2010), the court observed:

> In <u>Brown</u>, … the Court noted several background facts from which a reasonable jury could have concluded that the sheriff's department was on notice that one of its reserve deputies would likely use excessive force. <u>Brown</u>, 219 F.3d at 454-55. In this case, the reserve deputy was twenty-one years old and inexperienced in law enforcement. <u>Id</u>. at 454. In the two years before joining the department, he had been arrested for "assault and battery, resisting arrest, public drunkenness, driving while intoxicated, possession of false identification, driving with a suspended license, and nine moving traffic violations" and he had an outstanding warrant for his arrest at the time he was hired for being in violation of his probation. <u>Id</u>. at 454-55. While on the job, the deputy had been involved in a number of "takedown" arrests similar to the one at issue in the case. <u>Id</u>. at 455. Although the department had a practice of hiring full-time deputies who had completed a law enforcement education and training program, there was no such showing that reserve deputies were required to have this training. <u>Id</u>. The department itself did not provide training other than *ad hoc* on-the-job training and access to television training programs. <u>Id</u>. Finally, the department did not provide guidelines to its other officers about how to supervise the untrained reserve deputies. <u>Id</u>. at 456. Based on a review of these facts, the Fifth Circuit upheld the jury's conclusion that the county was liable under § 1983 because the department's training policy was so inadequate as to demonstrate deliberate indifference to the need for training and that the inadequate training was a moving force in the constitutional injury suffered by an unarmed civilian. <u>Id</u>. at 453.

<u>Stepney</u>, 695 F. Supp. 2d at 420-21. <u>Accord</u> <u>Valle v. City of Houston</u>, 613 F.3d 536, 549 (5th Cir. 2010) ("In the one case in which we found a single incident sufficient to support municipal liability, [i.e. <u>Brown</u>,] there was an abundance of evidence about the proclivities of the *particular officer* involved in the use of excessive force." (emphasis added)).[7] Because such egregious facts are not present in most cases, the exception is rarely found to be applicable.

---

[7] <u>See also</u> <u>Curran v. Aleshire</u>, 67 F. Supp. 3d 741, 759 (E.D. La. 2014) (Zainey, J.) ("[<u>Brown</u>] contains three underpinnings …. First, the court found that the sheriff provided *no* training or supervision (at least not formally) to the offending officer. Second, the court observed the background of the officer at issue, which included the following: no prior experience or education in law enforcement; twenty-one years of age; arrests for assault and battery, resisting arrest, public drunkenness, driving while intoxicated, possession of false identification, driving with a suspended license, nine moving traffic violations, an outstanding arrest warrant; and, an "excessive number of takedown arrests" in his few weeks on the job similar to but preceding the central incident in that case. Third, … the court explained why it upheld a finding that the sheriff had notice of the officer's background. It came to this conclusion on the basis of the family relationship between the sheriff and the officer, the small size of the police department, the arrests that the sheriff had authorized the officer to make, and the sheriff's recent review of the officer's background file made available to him containing the information regarding his arrests." (citations omitted)), <u>appeal dismissed</u>, 800 F.3d 656 (5th Cir. 2015); <u>Williams v. City of Cleveland</u>, Civ. Action No. 2:10cv215, 2012 WL 3614418, at *18 (N.D. Miss.

6

Here, plaintiff's factual allegations in no way support a contention that the exception would apply.  For example, plaintiff has not alleged any analogously egregious facts concerning the particular subordinate officers involved in this case, any facts concerning the training protocols present (or absent) at Rayburn, or any facts concerning the level of supervision of the officers.

For all of these reasons, plaintiff has failed to state a cognizable failure-to-protect claim against Tanner.

Plaintiff has likewise failed to state a cognizable individual-capacity claim based on Tanner's purported failure to take appropriate action on the administrative grievance.  As already noted above with respect to the similar claim against LeBlanc, an inmate has no constitutional right to an adequate and effective grievance procedure or to have his complaints investigated and resolved to his satisfaction.  Therefore, even if Tanner's response was inappropriate in some manner, § 1983 provides no remedy.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the defendants' motion to dismiss, Rec. Doc. 9, be **GRANTED** and that plaintiff's official-capacity claims against all defendants be **DISMISSED WITHOUT PREJUDICE** and his individual-capacity claims against James LeBlanc and Robert Tanner be **DISMISSED WITH PREJUDICE**.

---

Aug. 21, 2012) ("The Fifth Circuit has considered single violation liability several times, and, with only one exception in some thirty years since Monell, has consistently rejected application of the single incident exception.  The sole exception, Brown v. Bryan County, involved a failure to train a neophyte on the constitutional limits to the use of force.  The facts of Brown demonstrate that single violation liability applies *only in extreme circumstances*.  In Brown, the offending officer was the sheriff's nephew who had been on the job for only a few weeks and had no education or experience whatsoever in law enforcement.  Moreover, shortly before joining the sheriff's office, he had been arrested for several crimes, including assault and battery." (citations omitted; emphasis added)), aff'd, 736 F.3d 684 (5th Cir. 2013); Burrell v. Adkins, Civ. Action No. 3:01CV2679, 2008 WL 130789, at *2 (W.D. La. Jan. 10, 2008) ("The facts of Brown are illuminating.  There, the direct offender was a reserve officer (not a full-fledged deputy) who had been hired with *no* experience and *no* training and who had already demonstrated a propensity for unnecessarily rough treatment of arrestees over just a few weeks on the job.").

It is **FURTHER RECOMMENDED** that plaintiff's individual-capacity claims against Robert Goings and Charles Griffith be allowed to proceed pending further development.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this first day of September, 2017.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**